All right, the United States v. Brandon. Mr. McBeth. Thank you. Good morning, Your Honors. My name is Cullen McBeth, and I represent the appellant Michael Brandon. Your Honors, the government argued below that Officer Stewart lawfully stopped Mr. Brandon's car because he had reasonable suspicion that the car was in violation of Maryland's Tint Statute, Section 22-406 of the Transportation Article. That statute is identical in all material respects to the South Carolina Tint Statute at issue in this Court's opinion in United States v. Johnson. That South Carolina statute applied only to cars required to be registered in South Carolina. I thought he was also having difficulty verifying the registration. Is that correct? So the officer ran the tag through the NCIC database, learned that the tag was validly registered to a dealership in Pennsylvania, but didn't know, couldn't associate the tag with the car. So he couldn't tell whether the tag was registered to the car, but the tag was validly registered to the dealership. So why wouldn't that be reasonable suspicion? It's a factual circumstance that's different than Johnson. May not be dispositive, but it doesn't seem unreasonable to me that a police officer would want to verify the registration that he couldn't attach to a vehicle. May be wrong about it, but I don't know that that's necessarily unreasonable. Well, because the Tint Statute just does not depend, the applicability of the Tint Statute just does not depend in any way on whether the vehicle is registered or unregistered, registered validly in another state. The only fact on which the Tint Statute depends is whether the car is registered in Maryland. And if it's not, then the statute just does not apply, period. Now the registration So it would have to, a vehicle in Maryland, in your view, would have to have a Maryland plate on it in order for the stop to be valid. Or if the officer had some other basis to believe the car was registered in Maryland. But one way or the other, the officer has to have reasonable suspicion. What happens if it's a car driving with no plates? Well, then there's a statute that says cars have to have plates on them. So it would be a violation of that statute, but it wouldn't necessarily be a violation of the Tint Statute because again there's no reason to believe that car is registered in Maryland. It might, perhaps the car should be registered in Maryland, in which case it would be a violation of the statute that requires cars to be registered in Maryland unless an exception applies. But it wouldn't be a violation of the Tint Statute. The Tint Statute requires that the car be registered in Maryland. And so unless there's reason to believe the car is actually registered in Maryland, the statute just doesn't apply. And that's, that really is materially identical to what was at issue in Johnson where the car had to be, was, the statute applied if the car was required to be registered. And there just was no evidence that it was required to be registered. And for that reason, the Tint Statute in Johnson did not apply. Here, the car had a Pennsylvania plate. So not only was there no reason to believe the car was registered in Maryland, but there was affirmative reason to believe it was not registered in Maryland because it had an out-of-state plate. And so under the logic of Johnson, the Tint Statute just did not apply to that car. I think the question then becomes, you know, can the, does the good faith exception apply based on the Court of Special Appeals opinion in Baez? And we submit that it does not. First, I think there's no escaping the conclusion that Johnson and Baez directly conflict with one another. The government claims they don't conflict because this court in Johnson, quote, relied on the fact that South Carolina had construed its Tint Statute such that registration was an essential element of liability, whereas Baez supposedly construed the Maryland Tint Statute. Are we getting all tangled up in what the laws of Maryland and South Carolina and Pennsylvania and whatever require, does this state require registration? Does this state not require registration? But part of the difficulty that I'm having, when I visit a car dealer lot and looked around the dealer's lot pretty extensively because most of the car dealers between myself and my family, we bought a lot of cars, and I haven't seen many cars in the dealer's lot with tinted windows, either on the, in this case, it was both the side and the front windows. Why wouldn't that arouse suspicion? Because if you have a car in the dealer's lot with both side and front windows tinted, who's going to buy it? So let me say a couple points in response, John. First of all, the government below raised only one argument in support of reasonable suspicion, and that was the Tint Statute. They've never argued that the car was invalidly registered in Pennsylvania. In fact, at the motions hearing, if you look at pages 104 to 106 of the Joint Appendix... I want you to answer my question. Why would somebody have a car, why would a dealer have a car in the lot with tinted windows on both the front and the side? Your Honor, I don't know. With the Pennsylvania plate, though, the question becomes, is there reason to think that the car is not validly registered in Pennsylvania? And there are a couple of reasons why there's no reasonable suspicion as to that. First of all, the government has still to this day not cited any Pennsylvania statutes saying that a car with heavy tint can't pass inspection and can't be sold. But even if those statutes exist, Officer Stewart testified he was not familiar with Pennsylvania's traffic code. He doesn't know Pennsylvania law. And under this Court's opinion in Williams, which we cite in our reply brief, to make a reasonable... to make a car stop, the officer has to know... I understand you're trying to argue the particulars of Pennsylvania registration, but the question I'm having is that the combination of the dealer's tag plus the tinted windows would lead a reasonable officer to believe that something was amiss. I mean, is the officer just supposed to shrug and let the car go forward? Because, you know, there are all kinds of reasons that a dealer wouldn't be carrying a... wouldn't be displaying a car. One of the reasons is it's not going to be... that kind of car is not going to be sold. And the dealer, after all, is in business to sell cars. And the other thing is that it's not going to pass inspection. And so you've got a situation where the car is not going to be... a tinted car in a dealer's lot. It's an advertisement that, hey, this is... even if you'd want to buy it, this isn't going to pass inspection. And you're not going to sell it. And so an officer would be amiss, it seems to me, if we have a requirement that, oh, you're just supposed to let that go by and notice. That's problematic. Well, Your Honor, he has to have reasonable suspicion that some traffic offense or other offense is being committed. And when a car has... But even if there's a traffic... even if the stop is for a traffic expense, for a traffic violation, as a matter of course, an officer is going to be asking probably for a driver's license initially and a registration statement at that point, and perhaps an insurance card that shows that the car is covered. But registration aside, there is something unusual and not in a good way. If it were just a dealer's tag, that's fine. People have dealer's tags all the time. That doesn't arouse any suspicion. If they were just tinted windows, that's probably okay, too, because there are a lot of cars with tinted windows. And so either of these things by itself isn't problematic. But the combination of them raises questions that, in terms of the traffic laws and the rest, that something is not right. Something could be very wrong, and I want to check this out. Well, and your honor, an officer is allowed to have suspicion, but again, to go to the next step and make a stop, there has to be reasonable suspicion of some crime. And the government has... In this case, where the car has Pennsylvania plates, and Maryland law says that foreign cars can be driven with a valid out-of-state plate, the question then becomes is the Pennsylvania plate valid? And that depends on Pennsylvania law. And again, Officer Stewart testified that he was not familiar with Pennsylvania law. So even if, in theory, the court could assume that officers, in some cases, know other states' law, in this case, Officer Stewart said he did not know Pennsylvania law. And this court's opinion in Williams, which I cite in the reply brief, says an officer must know that the facts he's seeing represent a violation of the law. He has to know the law. It's not sufficient just to know the facts. The officer must know the law as well. And I would like to go back again to the fact that the government never raised this theory below. In their pleadings below, they raised it... What about the district court judge made this finding? Detective Stewart's unsuccessful attempt to ascertain the accurate state of registration before he initiated the traffic stop is a critical factual distinction from the Fourth Circuit's Johnson's case, where there was no attempt to verify the place of registration. But in this case, Stewart sought to determine the place of registration without success, and found that was a distinction. Is that... I'm assuming your argument is that that was an invalid conclusion by the district court, or... Factually, I think it's correct. I just think it's legally irrelevant. The fact that the officer tried to confirm the registration before making the stop doesn't change the fact that he did not know that the car was registered in Maryland. That's legally irrelevant. The officer has to know it, and the fact that he tried to get the information but couldn't doesn't change the fact that there is no reasonable suspicion that the car is registered in Maryland. I understand that the government raises a whole bunch of arguments on appeal that they didn't raise below. Could you clarify for me what it is they actually argued below? Yes, Your Honor. The one and only argument the government made below is that the car... Officer Stewart had reasonable suspicion that the car was in violation of the tint statute. And again, this is extremely clear if you look at pages 104 to 106 of the joint appendix. That's the beginning of the motions hearing where the district court comes out and says, basically, I'm going to set the table for what's at issue today. Counsel, if I say... If I miss anything, if I leave anything out that you think is important, I ask you to supplement as well. And then the court said, according to the government, Officer Stewart effectuated the warrantless stop because of a suspected window tint violation under Maryland law found at the transportation article of the Maryland Code section 22-406. And then the judge said on the next page, so I think I've laid out our background to get started. But again, I invite you to correct anything I've said if it's incorrect, of course, or to add to it if you feel it's inappropriate. I'll start with the government. And the prosecutor said, no, that sounds correct, Your Honor. In other words, affirmatively waiving any other basis for the stop besides the window tint statute. We cite cases in our reply brief that say this court cannot affirm on alternative grounds that were not properly raised below. This ground not only was not... The registration grounds not only were not properly raised below, but they were affirmatively waived on the record at the motions hearing. Now, the government, to be clear, did mention the dealer's tag. I'm not saying that the government didn't mention that fact. They did. But the importance of that fact, according to the government, was that it suggested the car was actually registered in Maryland. Or that the... Which doesn't make sense to me, but that was the argument they were making. Or that the officer should be able to stop the car to check whether it was registered in Maryland. But the government never cited the registration statute. It never suggested that the car... That the stop was independently legal because of invalid registration. Those arguments just did not come up. And if you read through the transcript of the motions hearing and their pleadings, they cite the tint statute over and over and over again. And they refer to the tint law over and over and over again. There's not a peep about the registration statute. It's an entirely new ground. It's just not a ground on which this court can affirm. Well, let me go back to good faith before your time runs out here. So let's assume that we have two stops. And the facts are completely identical. And so the officer and the defendant go to court in the morning in Maryland State Court under these facts. And there's no problem with the stop. He goes in the federal court with a different defendant, exactly the same facts, in the afternoon. And you say, there is a problem there. So how is the reasonable officer supposed to differentiate that situation so that good faith does not apply? So a couple answers. First of all, if the officer wants to make the stop, he can do so and take the case to state court. Most cases go to state court. So we're not saying that the officer is totally... His hands are totally tied. He can make the stop if the case goes to state court. But to answer your question... Well, these are two different stops. I don't know how much control he had over where the prosecuting attorney is going to bring these particular choices. The prosecutors can take the case to state court. But to answer your question, Your Honor, what the Supreme Court said in another case called Johnson from 1982 is that when Fourth Amendment law is, quote, unsettled, courts should apply the exclusionary rule so that police are encouraged to, quote, err on the side of constitutional behavior. So Baez, at most, renders the Fourth Amendment law in this case unsettled. We have two conflicting opinions. So in that case, Johnson, the Supreme Court's Johnson case says, apply the exclusionary rule so that police err on the side of not violating someone's rights. And that's not my rule. That's the Supreme Court's rule. And that's why all the cases we cite in our briefs say that the good faith exception applies when the law is unequivocal, undisputed, well-established, and not when it's unsettled, unclear, and not well-established. And this is, you know, we cite the Lara case from the Ninth Circuit, which I think is the most directly on-point case that either party cites. In that case, there was a California state intermediate appellate opinion saying that a certain kind of Fourth Amendment cell phone search was illegal. There was a Ninth Circuit case directly on-point in the opposite direction saying, no, it's illegal. And the Ninth Circuit said, you cannot apply the good faith exception in that case because the laws conflict. All right. Thank you, counsel. Thank you, Your Honor. Mr. Borenstein? Yes. Good morning, Judge Wilkinson. And may it please the Court, David Borenstein on behalf of the United States. The district court denied Mr. Brandon's oppression for three separate and independent reasons, each of which is sufficient to affirm. The most straightforward path is that the district court properly held that the Baltimore City police detective who pulled over Mr. Brandon had reasonable suspicion to do so. Reasonable suspicion is simply a minimal level of objective justification for the stop that is the Supreme Court's decision in Illinois v. Wardlow. And as Judge Agee pointed out, on pages 479 and 480 of the joint appendix, the district court said that the critical factual distinction in this case is that before the police officer pulled over Mr. Brandon, he saw the Pennsylvania dealer's plate. He concluded that that dealer's plate was out of place and inconsistent with the condition of the vehicle. The condition of the vehicle was that all of its windows, front windshield, back windshield, and the sides were completely tinted, so dark that even though it was a sunny day in mid-May, if you, and I ask you to turn to page five of the government's brief. So what was the reasonable suspicion of what crime at that point? That the car was not displaying a valid registration plate. That is a requirement under Maryland law. Is that what you argued in the district court? Your Honor, it was part and parcel of what we did, but the most important part is that that was the district court's decision. Do you, I understand that part. Do you disagree with opposing counsel's recitation of the record at JA 104-106 where the district court laid out what the government's argument was and the government agreed that's what the argument was? No, I don't disagree. We were relying upon the window tint statute, but part of the window tint statute is that you have to look at what the car's registration is, and I think the argument we were making was that the officer had reason to suspect that the Pennsylvania plate wasn't valid, and indeed, that is what the district court seized on. But what made the officer have reasonable suspicion to suspect then that the car should be registered in Maryland? Your Honor, again, what matters is that- There's a lot of states. It could be any state. So, Your Honor, this is an objective test. My friend cites United States against Williams. I would urge the panel to look at it. In Williams, that was a case in which a police officer pulled over a vehicle, and he cited the wrong statute. He said, I think that the vehicle was violating this statute. He got it wrong, and the officer couldn't actually cite the correct statute, and this court said at 740 F 3rd 308 at 313 that it doesn't matter that the officer was unable to cite the correct statute. What matters under the objective test is was the officer able to identify facts that objectively gave rise to reasonable suspicion, and here the district court- What fact gave, objectively gave rise to reasonable suspicion that there was some Maryland tent law being violated? So, again, Your Honor, what we are looking at is Maryland Transportation Statute 13-402.1 sub A sub 1, which says that out-of-state vehicles must be displaying current registration plates. And that's, okay, and just to cover the bases, that's one of the arguments that was not made by the government below, correct? I believe it was an implicit part of what we were arguing, but the most important thing. But I still, I just don't understand how that makes it reasonable that that car needed to be registered in Maryland. Your Honor, the idea is that the officer looked at the car and he said, all right, it's got a dealer's plate. Looks like it's a Maryland car. No, and when he was asked, why did you suspect that that plate wasn't valid, he said it's out of place. He said dealer's plates have to be on cars that are being held for sale. He said that car was not in a condition to be sold because it couldn't pass an inspection. In Maryland, to be sold in Maryland. He actually didn't specify. Well, does he know all the laws of all the other states? Your Honor, he doesn't have to. That's a point of Williams, and that's a point of the objective test. What's your, you had a, I'm taking you off track and you and I aren't going to agree on this, so what was your next? Well, actually, before we leave that point, I don't think that the Supreme Court decisions would uphold the point that the officer has to, that an officer has to be fully conversant with the different registration laws of different states in order to have reasonable suspicion for a stop here. It's the officer's obligation to ensure that the traffic and registration and driver's licensing, that the whole panoply of laws that govern the rules of the road are complied with. Yes, Your Honor. And as I say, regardless of the particular, the officer does not need to take a course in this state's registration and that state's registration. The point is, when an officer, does an officer have reasonable suspicion that something is amiss when you see side windows tainted and not just marginally tainted, but tainted so that nothing, no eyes of any kind can get through and they're not only the side windows are completely blackened in, the front windows windshield is completely blackened in, and in addition, you've got a Pennsylvania dealer's tag with a car that isn't going to pass, that no dealer would casually carry that car on the lot because it isn't going to be sold. And it isn't going to be passed inspection. Absolutely, Your Honor. And you're probably going to turn off people having something like that and say, what in the world is this dealer carrying that kind of inventory? And I would say, you know, normally when I go to look for a used car, I want to have some kind of confidence that the dealer is up and up and is carrying an inventory that is inspection worthy and whatever. And, you know, a car like that would say, what in the hell is this dealer doing? And it would turn people off. And then the officer has a general, the officer does not have to know the particulars of this state's registration and that, when you see a combination of totally blackened windows that nobody can see through and no sunlight can get in and no eye can pierce, and then you combine that with the dealer's tag, of course you'd have reasonable suspicion that something was not in order in the, whether it be the registration statement or whether it be the driver's license or whatever, you would certainly have a reasonable suspicion, hey, something is weird about this. I have not seen that kind of combination. I've been on the road a long time and I have never seen a car that has a dealer's tag and tinted windows. It's just, you're just going to have a reasonable suspicion that the basic credentials of driving are not in order. We fully agree, Your Honor. And I think you're hitting on what, how low of a bar reasonable suspicion is. And is that what you argued below? But Your Honor, it doesn't matter. Waiver doesn't matter? Does it matter when the defense doesn't argue something below? Your Honor, as the appellee, this court of course can affirm, but Your Honor, this court can affirm on any ground that appears in the record and this is actually the basis on which the judge ruled. That's page 480 of the Joint Appendix, but don't take my word for it. Actually, I'd like to turn your attention to Joint Appendix page 645. 480 of the Joint Appendix. Well, actually, 645 of the Joint Appendix. My friend decided to include the suppression transcript of a later case, United States against Leonard. And in that later case, my friend's office, the Federal Public Defender, distinguishes Judge Hollander's decision in Brandon from what was happening in Leonard. And let me explain to you. What line are we looking at? Is this 645 you're talking about? 645. It starts at line 3. This is a Federal Public Defender. And I quote, Brandon in particular, skipping down, did have a lot of those additional X factors as well. It had a dealer's tag from Pennsylvania. The dealer's tag seemed out of place. It seemed out of place because they knew that if you had a car like that as a car dealer, you wouldn't be able to sell it if it was so darkly tinted, right? So there's a combination of factors that were adding up to suspicion. But they also sought to verify the place of registration. The district judge then responds, right. I mean, there was suspicion about the validity of the tag. The Federal Public Defender responds, right. That is the FPD's own interpretation of Judge Hollander's decision. So it is simply disingenuous for them to now stand up and say that the suspicion about the validity of the tag. Excuse me, Judge Thacker. You go ahead. Oh no, you go ahead. I was going to say, to my mind, this is not a simple question of which state law required what registration. It is a question of the totality of circumstances here indicated that something was weird and something was amiss with respect to compliance with the most basic rules of the road. And I can't believe that we would be saying that an officer, a police officer, is going to be seeing a car with a dealer's tag and blackened windows and knowing that those two are incompatible with one another, and he just has to shrug and say, oh, no problem. And we're talking about allowing an officer, which they do all the time, to stop and ask for the registration and ask for a driver's license and often to ask for an insurance certification. And that's basic to policing traffic and the way that drivers are supposed to operate.  I've got another question about another aspect of this case, but Judge Thacker has some questions she wanted to ask. Thank you. Yeah, just real quick, I did want to hear what you wanted to say about JA 480, because I think you were saying that's the basis upon which the district court ruled. So, and I'll just read from it. I think it's playing on its face. Yeah, I'm looking at it. The district court's unsuccessful attempt to ascertain the accurate state of registration before he initiated the traffic stop is a critical factual distinction from the Fourth Circus Johnson case. As discussed at length, the purpose of a Terry stop is to investigate possible criminal activity or dispel suspicion. The suspicion that the officer had was that this plate was out of place. And I want to note, Judge Wilkinson is absolutely correct. My friend cites nothing saying that you have to peer inside of the officer's mind and see if he knows the law, have him pass a bar examination. The case law is very clear. The officer must identify facts, and then you ask whether a reasonable, well-trained officer knowing those facts would have reasonable suspicion. And the answer is yes. I mean, as a legal matter, there's no... Reasonable suspicion of what? That the car was not displaying valid registration plates as required by Maryland Code of Transportation, Section 13-42.1, Sub A, Sub 1. And it can't possibly be the case that simply because the district judge did not cite that statute after saying that the officer had reasonable suspicion to dispel suspicion about the tag, that suddenly it has been forfeited, Your Honor. And I want to note that as a legal matter... It's not a reasonable suspicion necessarily that's tied to registration. It is a reasonable suspicion that this combination of factors... We agree, Your Honor. Led to a reasonable suspicion that the driver's credentials were not in order. And Judge Wilkinson, if I could add, we absolutely agree. But to boot, the officer was fully correct in everything he believed. He said that he believed that for that dealer's tag to be valid, the car had to be held out for sale. And indeed, under Pennsylvania law, this is Title 75, Section 13-36, Sub A, dealer plates may only, quote, be on vehicles being held for sale. And then my friend said, well, you know, was the officer also right that that car had to pass an inspection and it couldn't have dark window tints? Yes, the officer was correct. This is Pennsylvania Department of Transportation Vehicle Equipment and Inspection Regulation 175.8, which says that for a vehicle to be sold... transform officers is a limit to which we can transform police officers into lawyers. I agree. There just is. And the Supreme Court has made that point over and over. They sometimes approach things... We've approached things from a very legalistic point of view, and we're going to ask whether this registration or that is in order. But you know, the point that the Supreme Court is making in Illinois v. Gates and in a number of cities... Common sense, Your Honor. ...is that officers are... They're not... They're supposed to know basic elements of law, but they're not trained in the refinements of law. They are trained definitely in basic legal requirements such as reasonable suspicion, and they just can't go around stopping cars willy-nilly. They can't do that. But there's a difference between being aware of basic requirements of law and being required to master the refinements of registration law because they do have... What they bring to this whole situation is a certain practicality of judgment. We agree, Your Honor. And that's what this officer exercised. It was a practical instinct that there was something just weird and wrong and that this driver's credentials are not in order. We fully agree, and I really do believe... I mean, looking at the photo on page 5 of the government's brief, you know, it's a sunny day. The sun is beaming down on the car. There's an officer to the left sweating, and you see a completely black windshield. You can't even see in with the sun directly shining on it. I think any of us who have actually walked by one of these cars where everything is tinted over and you can't even see it, it is very strange and intimidating. And I agree. A common-sense judgment by an officer would look at that dealer's plate and say, I'm sorry, that's just not right. And that actually turned out to be not right. It was a completely unregistered vehicle. The defendant said that he got the plate from someone else. Yes, Your Honor. On another point here, the conduct that was displayed after the stop was very disquieting. Yes. And there was a tussle there, and then the driver puts his foot on the accelerator. Yes, Your Honor. And as I understand it, the officer was dragged across the street? That is correct. I mean, was the officer on his back? No. So what happened is, and I'll turn to the attenuation point here, Your Honor. But if you don't mind, just for one thing, because my friend specifically asked me to cite the regulation, I just want to point out to Your Honor that under the Pennsylvania Department of Transportation's regulations for vehicle equipment inspection, 175.8, it has to pass the inspection, and then 175.67 sub D sub 4, no car may have a tint, which, quote, does not permit a person to see or view inside of the vehicle. So the officer, despite saying he was not familiar with the traffic laws of other states, he did say he knew about dealer's tags, and he was absolutely correct here. Now to attenuation, Your Honor. We believe that another grounds for affirmance is that the district court properly held that the seizure of the firearm was attenuated from the initial stop, assuming that there wasn't reasonable suspicion. And to clarify, my friend says that we concede that there wasn't reasonable suspicion. That was taken from the good faith and attenuation arguments where we're proceeding under the assumption that there wasn't. Are you going to answer the question?  I want to know what test is there in terms of dissipation of the tint? Absolutely, Your Honor. Suppose the driver decided to pull a gun and actually fire and shoot the officer. The exclusionary rules would apply to that. If, let's say, the driver was sitting there, and then in the middle of the inspection, in the middle of producing a credential, he essentially produces a gun and shoots the officer. Does a murder after a traffic stop dissipate the tint? I believe it wouldn't. The governing decision here is actually Judge Agee's decision in the United States against Gaines. And if I can just do a little bit of table setting, there's a precedent to this court, United States against Sprinkle. That says that if a defendant is illegally stopped, but he commits a new crime during that stop, then any gun that is taken off of him pursuant to a search incident to lawful arrest for that new crime is admissible. Gaines created an exception there. And the Gaines exception is that if the police discover the gun before the new crime, then there is no attenuation because there is no intervening event. So the question here is when was the gun discovered? The district court, as a finding of fact, said that the gun was only discovered after the intervening crime where the defendant tried to drive off, crashed into an occupied car, crashed into a telephone pole, and injured the officer. After that happened, other police officers arrived on scene. So we would have to find that that finding of the district court was clearly erroneous. To overturn it. To overturn. And I'll say my friend doesn't actually seriously try to argue it's clearly erroneous. And the facts support what the district court found. The record, first the district court looked at what the officer testified to in the suppression hearing. On page, joint appendix page 142, the officer said that he saw, quote, a bulge of the shape and size of what I believed to be a handgun when the defendant got out of the car. My question is do we have here the kind of intervening criminal offense that would dissipate the team? And I'd say yes because it goes to what discovery means. And that was the key issue in Gaines. I looked it up in the dictionary. Discovery means, this is Merriam-Webster, to obtain sight or knowledge for the first time. When the officer saw the bulge on the defendant, he then had reasonable suspicion that there was a gun. That is not discovery or knowledge, but reasonable suspicion for a pat down. That's what he proceeded to do. He started to the left. He then went to the right. Watch the body camera footage because that's the second thing the district court looked at. The district court then noted that when he felt the bulge three times, he asked the defendant, what is this? What is this? What is this? Showing that the officer had not yet discovered that it was a firearm. For this court to find that it was clearly erroneous that by seeing a bulge, the firearm was discovered, the officer would have jumped over reasonable suspicion, jumped over probable cause to knowledge that the defendant was unlawfully possessing a firearm. And that's just not right. Okay. Thank you, counsel. Can I ask him one more question if I could?  If you could give us an abbreviated response to the good faith argument of opposing counsel. Sure, your honor. I really think when it comes to good faith, it is determined by what the good faith analysis is. The district court cited it. It's set forth in herring against the United States. The inquiry is whether the question is the objectively ascertainable question whether a reasonably well-trained officer would have known that the search or seizure was illegal in light of all the circumstances. There has been nothing brought forward by my friend showing that under the circumstances here, where the police officer reasonably suspected that the Pennsylvania dealer plates were not properly on the car, that it was illegal to pull over that car. My friend relies upon the Frank Johnson decision from this court, but as footnote two of that decision makes very clear, there was nothing in the record showing that the officer had any reason to suspect the validity of the out-of-state plate. Here the officer did. In the United States against Stevens, this court made it very clear that my friend relies upon the Supreme Court's decision in Davis. This court in Stevens said Davis is actually, you know, sets forth only one instance in which the good faith principle applies, but there are many other, and we need to go back to that fundamental test, which I just said. And again, as this court said in Stevens, because exclusion is a last resort and not a first impulse, it's probably more proper, this court said, to talk about in terms that the exclusionary rule is more the exception. And since there's nothing that would have shown this officer that what he was doing was illegal, especially because Baez sets forth the principle that in general, if an officer suspects that he's pulling over a car with an out-of-state plate and he is unable to determine the state of registration, of course he's able to do so. All right, thank you.  Thank you. Hold on one second. Yes, Your Honor. Just a second. He has some questions. You okay? Thank you. We ask that you affirm. Thank you. And Mr. McBeth, you have some rebuttal time, sir. Thank you, Your Honor. I'd like to start by going back to your point, Judge Agee, about two different stops leading to different results in federal and state court and just say that that happens all the time. That's a feature of our federalist system, that judges in state court will apply state law, and sometimes that will be different from what federal law is. And that is not necessarily a problem. That's something that we see every day. And so the question is when this officer has two cases directly conflicting with each other on the legality of the stop, what is he supposed to do? And again, the Supreme Court's Johnson opinion says, err on the side of constitutional behavior. It's like what the Supreme Court said in Leon, which we cite in our brief. They indicated in that case that if one judge rejects a warrant application and then a second judge approves it, it would be unreasonable to rely on that application given that it was previously rejected by the first judge. And that is analogous to what we have here. This court rejected the legality of the stop in Johnson. Bias approved it. But under those circumstances, it's not objectively reasonable to proceed. Opposing counsel said that police officers are not required to know the law, but the Williams case actually says they are. And if you go back to Williams, it's quoting from this. And then they also argue good faith, wherein they must need to know the law. Correct. Exactly, Your Honor. And in Williams, this court was quoting from the Sixth Circuit's opinion in Hughes where the court said, in order for a stop based on a moving or parking violation to be permissible under the Fourth Amendment, it is not sufficient for a police officer to know the facts that give rise to probable cause or reasonable suspicion. He must also know at the time of the stop that those facts give rise to probable cause. In other words, he must know the law. And Officer Stewart clearly testified he did not know Pennsylvania law, so he doesn't know whether the registration is valid in Pennsylvania. He has no basis to know that. And under Williams, he has to know that. That is the law. Opposing counsel also said that this court can affirm on any ground supported by the record. That is an incomplete statement of the law. The court can affirm on any ground supported by the record that was properly raised below, and opposing counsel essentially conceded that they did not raise any basis for the stop besides the window tint statute. So under those circumstances. But then he also directed our attention to JA 480 and indicated that the issue with the registration was part and parcel of the district court's decision, and so it's properly before us. So what I read the district court to be saying is that the stop was legal under Baez, and what Baez said is that an officer can stop a car to check the registration to see whether it is registered in Maryland and therefore subject to this tint statute. It's all part of the Maryland tint statute argument. It's not about a separate invalid registration argument, which was never raised below. Why don't you take your remaining time and tell us about the Intervening Criminal Act. Sure, Your Honor. So first of all, the government for the first time today has said that discovery is a finding of fact subject to clear error. That's not how this court reviewed it in Gaines. To be honest, Gaines didn't say exactly what the standard of review is, but I think it is either a legal question or at best a mixed question of law and fact because the brute facts of what happened are subject to clear error review, but whether that qualifies as discovery I think is a legal question. In any event, the plea agreement in this case, which the government authored and in which the government agreed and stipulated that it could prove the facts in there beyond a reasonable doubt, says that when Officer Stewart put his hands on the gun, it was immediately apparent that the object was a gun. If that's not discovery, I don't know what discovery is. If it is immediately apparent to you that something is a gun, then the gun has been discovered. The government emphasizes that Officer Stewart said, what is this, three times, but again we cite to Beauchamp, which the Gaines opinion said was consistent with Gaines, and in that case the officer asked the suspect as well, what is this in your pants, and notwithstanding the fact that the officer asked a question, the Sixth Circuit said that the object had been discovered previously. Also in Beauchamp, the officer looked at the plastic bag in the defendant's pants and, quote, assumed that it was drugs, but didn't know. He wasn't sure. He just thought it was. Nevertheless, the Sixth Circuit said that the object had been discovered before the intervening act. So since Beauchamp is consistent with Gaines, that would indicate that the item was discovered here before the intervening act. And finally, Gaines also said its opinion was consistent with the First Circuit's case, Camacho. In that case, the police officer tapped the gun with his hand once. The defendant immediately took off. That was it. Under those circumstances, the court said the gun had been discovered. The officer didn't manipulate the gun. He didn't hold on to it. He didn't do anything other than just tap it once. And on those facts, the First Circuit said that's discovery. Here we have the officer holding the gun, and it is immediately apparent to him that it's a firearm. All right. Thank you, Counsel. Thank you, Your Honor. Steve, we have no further questions.  All right. We will come down and greet counsel and then proceed directly into our last case. I want to thank you, Mr. McBeth. I see that you're a court-appointed public defender, and I really want to thank you for a fine job representing your client. I wanted to express the appreciation of the court. Thank you, Your Honor.
judges: J. Harvie Wilkinson III, G. Steven Agee, Stephanie D. Thacker